UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LYN SUTHERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:12-cv-00408 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant, | ) |

OPINION AND ORDER

This matter is before the court on the petition for judicial review filed by the plaintiff, Lyn Suthers, on November 15, 2012. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Lyn Suthers, filed an application for Social Security Income and Disability Insurance Benefits on April 9, 2010, alleging that she became disabled on June 22, 2007. (Tr. 10) Her application initially was denied and was denied upon reconsideration. (Tr. 64-70, 73-75, and 92-104) Suthers requested a hearing before an administrative law judge (ALJ), and a hearing was held on May 26, 2011 before ALJ Steven J. Neary. (Tr. 29) Suthers appeared and testified on her own behalf. (Tr. 29) Vocational Expert (VE) Dr. Robert Barkhaus also testified at the hearing. (Tr. 29.) Suthers was represented by counsel, Kenneth E. Mcvey. (Tr. 29) On July 14, 2011, the ALJ rendered a decision denying benefits. (Tr. 7-28) On September 11, 2012, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final

1

decision of the Commissioner. (Tr. 1-6 and 148) Suthers filed this action for judicial review of the final decision of the Commissioner on November 15, 2012.

At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Suthers had not engaged in substantial gainful activity since June 22, 2007, her alleged onset date. (Tr. 12) At step two, the ALJ determined that Suthers had the following severe impairments: lumbar spondylosis, degenerative disc disease at C6-7, left shoulder impingement, trapezial inflammation, obesity, and depression. (Tr. 12) The ALJ next found that Suthers' impairments did not meet or equal Listings 1.02, 1.04, or 12.04. (Tr. 13)

At step four, the ALJ determined that Suthers had the residual functional capacity to perform less than a full range of light work in that she, "cannot perform more than occasionally crawling, crouching, kneeling, climbing, stooping, and cannot work at occupations requiring overhead reaching with her left upper extremity. She cannot engage in occupations that require complex or detailed tasks, but would remain capable of performing simple repetitive tasks." (Tr. 15) In reaching this decision, the ALJ followed a two-step process. (Tr. 15) First, the ALJ determined whether there was an underlying medically determinable physical or mental impairment. (Tr. 15) Second, the ALJ evaluated the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. (Tr. 15)

The ALJ first explained that Suthers testified that she had pain in her back, which appeared at the top of her neck, the center of her back, and in her tailbone. (Tr. 16) Suthers testified that her condition had worsened since 2007. (Tr. 16) Suthers explained that her pain was aggravated if she tried to walk or sit for long periods. (Tr. 16) Suthers described having

2

problems lifting and carrying because of her left shoulder. (Tr. 16) At the hearing, Suthers testified that she had problems with her memory as well. (Tr. 16) Suthers reported taking medication with the side effect of sleepiness. (Tr. 16) Suthers last performed volunteer work in September 2009 that was required for her to receive public assistance. (Tr. 16)

The ALJ next summarized Suthers' daily activities. (Tr. 16) Suthers spent her day waking her daughter up for school, walking her to the bus stop, picking her up in the afternoon, and getting her a snack. (Tr. 16) Suthers did some household chores in addition to bathing and dressing herself. (Tr. 16)

The ALJ then assessed Suthers' medical records. (Tr. 16) The medical evidence revealed that Suthers is 55 inches in height and weighed 220 pounds, 234 pounds, 241 pounds, and 258 pounds in 2007, 2009, 2010, and 2011, respectively. (Tr. 16) In 2007, a medical examination showed that Suthers' motor, sensory, and vibratory functions and gait were normal and that her deep tendon reflexes were symmetrical and equal. (Tr. 16) In 2009, Suthers was treated for lower back pain but was able to walk around the room without difficulty. (Tr. 16)

In January 2010, Suthers reported left extremity pain due to lifting 60-pound bags at her job. (Tr. 16) In August 2010, Saudia Mushkbar, M.D., diagnosed Suthers with left shoulder impingement and trapezial inflammation. (Tr. 16) Around this time, Suthers alleged that she had been experiencing left neck and shoulder pain for 15 years. (Tr. 16) X-rays showed degenerative changes at the acromioclavicular joint. (Tr. 16) Suthers was normal in her left shoulder range of motion, general strength, grip strength, left radial pulses, and ulnar area pulses. (Tr. 16)

Suthers attempted to treat her pain in a variety of ways. (Tr. 16) She went to physical therapy, but only on a limited basis due to pain and soreness. (Tr. 16) In August 2010, Suthers

3

reported that she stopped taking her pain medication due to its ineffectiveness. (Tr. 16) Suthers also reported numbness and tingling in her left hand. (Tr. 17) In December 2010, x-rays showed that Suthers had degenerative disc disease at C6-7. (Tr. 17)

In January 2011, Dr. Mushkbak noted that Suthers reported a history of depression, anxiety, and low back pain. (Tr. 17) In March 2011, Suthers scored a 44/50 on an Oswestry Test, which tended to indicate that Suthers was either bed bound or exaggerating. (Tr. 17) On April 20, 2011, Dr. Coats diagnosed Suthers with a left knee sprain/strain stemming from a previous fall. (Tr. 17) Subsequently, Suthers was diagnosed at Ortho NorthEast (ONE) with left degenerative osteoarthritis in the knee/mild patellofemoral degenerative joint disease and possible medical and/or lateral meniscus tears. (Tr. 17) On April 26, 2011, Suthers saw Julie Chao, M.D., because she no longer believed that her treatment at ONE was helping. (Tr. 17) Dr. Chao diagnosed Suthers with lumbar radiculopathy and left shoulder pain and started her on Perdocet 7 5/325. (Tr. 17)

In May 2011, Suthers had an MRI taken of her lumbar spine and left shoulder. (Tr. 18) The MRI of Suthers' lumbar spine revealed multilevel acquired spondylosis superimposed on mild congenital narrowing L3-S, L3-L4, and L5-S1 mild facet and disc disease, and L4-L5 central disc protrusion with annular tear and moderate facet arthropathy causing moderate foraminal and central canal narrowing with flattening of the L4 nerve roots in the foramen and L5 nerve roots in the lateral recess. (Tr. 18) The MRI of Suther's left shoulder displayed partial thickness (greater than 50%), partial width (12 mm), undersurface tearing extending 13 mm medial to lateral with no retraction or muscle atrophy; a small intramuscular ganglion extending from the infraspinatus tear into the body of the infraspinatus muscle; and tendinopathy without

tearing of the supraspinatus. (Tr. 18) The MRI also revealed degenerative hypertrophy of the acromioclavicular joint with a 3 mm subacromial spur indenting the superior aspect of the supraspinatus. (Tr. 18)

Besides Suthers' physical impairments, the medical evidence showed that she suffered from mental impairments. (Tr. 18) In January 2007, Suthers was treated for a panic attack and prescribed Celexa. (Tr. 18) In September 2010, Wayne Von Bargen, Ph.D., examined Suthers at the request of the State agency and diagnosed her with a major depressive disorder, recurrent, moderate severity, and a generalized anxiety disorder. (Tr. 18) Dr. Von Bargen noted that Suthers had experienced a major depressive episode several years earlier and was suffering from depressive symptoms including sleep disturbance, worry, and irritability. (Tr. 18) Further, Dr. Von Bargen indicated that although Suthers symptoms had improved, she still dealt with anxiety issues. Dr. Von Bargen assigned Suthers a GAF of 60. (Tr. 18)

In May 2011, Suthers was diagnosed with a major depressive disorder, single episode, severe without psychotic features, and posttraumatic stress disorder, both by Prachee Samant, MSED, QBHP, and then by Viann Ellsworth, RN, MSN, CNS-BC, at a subsequent evaluation. (Tr. 18) Although the diagnosis of posttraumatic stress disorder was not rendered by a medically acceptable source, the diagnosis of depression was consistent with Dr. Von Bargen's diagnosis. (Tr. 18) During this assessment, Suthers received a GAF of 48. (Tr. 18) The ALJ explained that "the GAF score is not purely, or even primarily, an evaluation of psychological limitations in the sense used by the Social Security Administration." (Tr. 18) Therefore, the GAF was useful in providing a snapshot into Suthers condition, but the GAF score did not prove that Suthers had an ongoing disability under Social Security regulations that would restrict her in a manner greater

5

than set out in her residual functioning capacity. (Tr. 18–19)

Although the medical evidence showed that Suthers had severe physical impairments, the ALJ found that the clinical and objective evidence presented did not preclude her from the standing, walking, and sitting requirements of light work activity. (Tr. 19) The ALJ determined that Suthers was precluded from any overhead reaching in her left arm due to shoulder impairment. (Tr. 19) Nonetheless Suthers' testified that she was able to lift or carry up to twenty pounds, so she could perform the lifting required by this exertional level. (Tr. 19) The ALJ acknowledged that Suthers could not perform more than occasional postural procedures as well due to her back impairment. (Tr. 19)

With regards to Suthers' mental impairments, the ALJ determined that Suthers could not perform more than simple, repetitive tasks because she could not follow or understand detailed or complex instructions or tasks as a result of her depression. (Tr. 19)

The ALJ concluded that based on the record as a whole, Suthers' medically determinable impairments reasonably could be expected to cause the alleged symptoms. However, Suthers' statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the above stated RFC. (Tr. 19) In reaching this determination, the ALJ relied on objective evidence that displayed that Suthers was capable of a higher degree of functioning than she alleged. (Tr. 19–21) The Oswestry Test revealed that Suthers was exaggerating about her physical impairments. (Tr. 19) In addition, physical therapy records showed that Suthers benefitted from therapy until she was reminded of her impairment. (Tr. 19)

With respect to Suthers' psychological impairments, the ALJ emphasized that Suthers

6

never sought treatment for depression and anxiety until May 2011, despite informing doctors that she had this history. (Tr. 19) Following the hearing, Suthers submitted a form from 2005 stating that she had anxiety-depression, hypertension, chronic fatigue, and chest pain, which was signed by Dr. Chaney. (Tr. 20) The ALJ gave little probative value to the form because this was well prior to Suthers's onset date (Tr. 20) The ALJ presumed that Suthers' condition had worsened since she recently sought treatment, but it was unknown whether Suthers would suffer additional limitations, and to what extent, once treated. (Tr. 19)

In addition, the ALJ considered Suthers' testimony that she was unable to be around others and had memory problems, but he found that these were not of disabling severity because Suthers did not seek treatment until May 2011. (Tr. 19) The ALJ also noted that Suthers did not report these problems to Dr. Von Bargen in September 2010. (Tr. 19) At that evaluation, Suthers correctly repeated five digits forward and three digits backwards and performed simple arithmetic problems. (Tr. 20) Furthermore, the ALJ acknowledged that Suthers had no problems interacting with medical staff, attending church, or contacting others by phone. (Tr. 20) Moreover, the ALJ observed that Suthers denied having any psychological issues, seeking any mental health treatment, taking medication, or suffering from a mental impairment, when contacted in May 2010. (Tr. 20) Therefore, the ALJ gave only partial weight to Suthers' testimony where it was supported by objective evidence of record. (Tr. 20)

The ALJ also considered several other sources with varying weight when reaching this decision. (Tr. 20) The ALJ afforded great deference to the opinion of Dr. Von Bargen, which he incorporated into the RFC. (Tr. 20) The State agency medical consultants' physical assessments were given partial weight because the determinations did not find a severe impairment relative to

7

the Suthers' ITP. (Tr. 20) The ALJ concurred with the State agency psychological consultants who concluded that Suthers may have problems with complex or detailed instructions but that she remained capable of understanding and carrying out simple work-like instructions. (Tr. 20)

At step five, the ALJ concluded that Suthers could not perform past relevant work as a residential advisor. (Tr. 21) However, the ALJ identified other jobs that Suthers could perform, including electrical accessories assembler (600 jobs regionally), small products assembler (3,000 jobs regionally), and laundry folder (300 jobs regionally). (Tr. 21) The ALJ noted that he relied on the VE's testimony to reach these conclusions. (Tr. 21)

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Pepper v. Colvin***, 712 F.3d 351, 361–362 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852 (1972)(*quoting* ***Consolidated Edison Company v. NRLB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* ***Pepper,*** 712 F.3d at 361–362; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence

and if there have been no errors of law.  *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013)*; Rice v. Barnhart*, 384 F.3d 363, 368–369 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable " to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.**" 42 U.S.C. § 423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.  **20 C.F.R.  § §  404.1520, 416.920**.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R.§ § 404.1520(b), 416.920(b).**  If she is, the claimant is not disabled and the evaluation process is over.  If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § § 404.1520(c), 416.920(c).**  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.**  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work.  If, at this fourth

9

step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § § 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1520(f), 416.920(f).**

Suthers complains that the ALJ erred because he determined that she had moderate limitations in concentration, persistence, or pace, and failed to incorporate these limitations into the hypotheticals he posed to the VE. Suthers relies on *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009), and *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010), to support her argument. In *Stewart,* the Seventh Circuit rejected the Commissioner's argument that the ALJ accounted for the claimant's mental impairments by restricting the hypothetical to the VE to simple routine tasks. *Stewart*, 561 F.3d at 684–85. Similarly, in *O'Connor–Spinner*, the Seventh Circuit reversed and remanded the district court's decision denying benefits, finding that it was unclear from the ALJ's restriction to "routine, repetitive tasks with simple instructions" whether the VE properly was informed of and accounted for limitations in "concentration, persistence and pace." *O'Connor–Spinner*, 627 F.3d at 620–21.

The cases relied upon by Suthers are not on point as neither of them holds that a lapse on the part of the ALJ in framing the hypothetical must result in a remand. Noteworthy, in *O'Connor-Spinner*, the Seventh Circuit explained that it does not insist on a *per se* requirement that the specific terminology "concentration, persistence and pace" be used in the ALJ's hypothetical to the VE in all cases. *O'Connor–Spinner*, 627 F.3d at 619. Additionally, the

10

instant facts are distinguishable from the cases relied upon by Suthers. Here, the medical consultant who reported Suthers' limitations in concentration, persistence, and pace effectively translated his opinion regarding those limitations into an RFC assessment. The ALJ then adopted the RFC of that consultant and incorporated that RFC into his hypothetical to the VE.

Accordingly, this case is more akin to those cases relied upon by the Commissioner. In *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002), the Seventh Circuit let stand a hypothetical that omitted the terms "concentration, persistence and pace" when the ALJ relied on a consultative doctor's findings that had been translated into a specific RFC assessment. *Johansen*, 314 F.3d at 289. Similarly, in *Milliken v. Astrue*, 397 Fed.Appx. 218 (7th Cir. 2010), the Seventh Circuit found that the ALJ adequately accounted for the claimant's limitations in concentration, persistence, and pace in his hypothetical to the VE because it incorporated the state's testifying expert's assessment that the claimant could perform unskilled work despite her mental limitations. *Milliken*, 397 Fed.Appx. at 222.

Here, in formulating the hypothetical to the VE, the ALJ incorporated all of the restrictions contained in his RFC for Suthers. In developing his RFC, the ALJ relied upon consulting physician, Dr. Gange's opinion. Dr. Gange completed a mental residual functional capacity assessment of Suthers and translated his findings of Suthers' limitations into a specific RFC that concluded she could perform simple, repetitive tasks. The ALJ adopted Dr. Gange's conclusion in formulating his RFC and included all of the restrictions contained in his RFC in the hypothetical to the VE.

Suthers complains that in doing so the ALJ failed to account for the distinction between the ability to learn how to do a task of a given complexity and the ability to stick with the task

11

over a sustained period of time.  However, Dr. Gange acknowledged that Suthers had moderate limitations in her ability to maintain attention and concentration for extended periods, yet he determined that she could "carry out" simple instructions.  Suthers argues that this limitation reflects that she could learn tasks but does not account for her ability to sustain these tasks.  She overlooks that Dr. Gange further concluded that Suthers could "attend to task for sufficient periods of time to complete tasks." (Tr. 327) The ALJ adopted this opinion, which reflected that Suthers had the ability both to carry out instructions and to complete tasks in their entirety.  The court finds that this accounts for both Suthers' ability to learn and to sustain tasks until completion.

The ALJ supported his RFC finding with medical evidence of record, and Suthers has failed to show that this reliance was misplaced as it accounted for both the ability to learn and sustain tasks.  The ALJ adopted the opinion of Dr. Gange, which acknowledged Suthers' moderate limitations and converted them into an RFC finding.  Suthers has not succeeded at showing that the RFC finding should have incorporated greater limitations.  The ALJ proceeded to pose hypothetical questions to the VE that accounted for all of the supported RFC limitations.  Because Suthers has not shown that the ALJ's RFC finding was flawed and the ALJ incorporated all of Suthers' limitations into the hypothetical he posed to the VE, unlike the ALJ *O'Connor-Spinner*, the court finds that the ALJ did not err.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 25th day of February, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge